UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,

        Plaintiff,

v.

EMJ CORPORATION

        Defendant.

Civil Action No.: 1:11-cv-00083

## FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF OF NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

COMES NOW Plaintiff National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") and files this First Amended Complaint for Declaratory Relief, and alleges as follows:

### INTRODUCTION

1. This is an action for Declaratory Judgment pursuant to 28 U.S.C. § 2201 to determine and resolve questions of actual controversy involving two commercial umbrella liability insurance policies issued to EMJ Corporation ("EMJ") by National Union and EMJ's right to coverage under those policies.

2. National Union seeks a declaration that it has no duty to defend, indemnify or otherwise pay EMJ for various claims of liability and damages asserted against it in connection with alleged construction defects that are the subject of a lawsuit filed in the Circuit Court of

Harrison County, Mississippi. *The Promenade D'Iberville, LLC v. M. Hanna Construction Co., Inc.,* No. A240210-41 ("Underlying Action"). A copy of the Plaintiff Promenade's Amended Complaint in the Underlying Action is attached as Exhibit "A."

3. There is an actual, present and bona fide controversy between the parties concerning National Union's coverage obligations to EMJ under the two policies at issue regarding the claims of liability and damages for the construction defects at issue in the Underlying Action.

## THE PARTIES

4. National Union is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business in New York, New York.

5. EMJ is a Tennessee corporation with its principal place of business in Tennessee. The National Union insurance policies at issue in this action were issued to EMJ in Chattanooga, Tennessee.

## JURISDICTION AND VENUE

6. The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because National Union is a citizen of a state different from EMJ, and the matter in controversy, exclusive of interest and costs, exceeds Seventy-Five Thousand Dollars ($75,000).

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because this action seeks the application of policies of commercial umbrella liability insurance issued in the State of Tennessee.

8. EMJ has a registered agent in Tennessee, National Registered Agents, Inc., 2300 Hillsboro Road, Suite 305, Nashville, Tennessee 37212. The Court has personal jurisdiction over EMJ.

## GENERAL ALLEGATIONS

### The Underlying Action

9. Promenade filed the Underlying Action against EMJ in March 2010.

10. The Underlying Action is a suit on a contract with The Promenade D'Iberville ("Promenade"), under which EMJ was responsible for the construction of a commercial retail shopping center and associated sitework at the intersection of Interstate 10 and Interstate 110 in D'Iberville, Mississippi, called "The Promenade." Promenade's Amended Complaint alleges that EMJ's subcontractors performed the relevant sitework and certified the building pads at The Promenade shopping center project as meeting the contractual requirements. After the completion of the sitework and certification of the building pads, certain improvements allegedly were made by EMJ on behalf of Promenade and by other owners and retailers. Both the improvements made by EMJ on behalf of Promenade and by the other owners and retailers allegedly have suffered and will continue to suffer damages as a result of certain "materials beneath some of the improvements [having] expanded, producing upward pressures that cause damage, injury and/or harm to the improvements above them." Promenade identifies the allegedly deficient subsurface material as "OPF42."

11. Promenade alleges damages that appear in the form of "movement in and of the Promenade Improvements, resulting in damage, injury and/or distress in the floors, walls and finishes of buildings and injury, damage and distress to pavements, sidewalks and other

3

improvements." In addition, the Amended Complaint alleges that "[t]he injury, damage and/or distress thus far suffered includes, among other things, buckled and cracked flooring, cracks in interior walls, cracks and/or separation in exterior walls, inability to open and/or close doors and other damage."

12. Promenade alleges that it "has caused, and is continuing to cause, reasonable steps to be taken at The Promenade shopping center to mitigate harm resulting from the foregoing circumstances, including but not limited to emergency safety measures, protective and cosmetic repairs, slab removal and replacement, the removal and replacement of other materials (including subsurface materials) and repair or replacement of finishes."

13. The damages sought by Promenade include: compensatory damages against EMJ and the other defendants, jointly and severally, including the costs to Promenade for "repairing property damage, the costs of remedial work, tenant and inventory management and moving costs, lost rent, lost profit, loss of use of funds, additional interest, inducement fees, business interruption losses, all attorney's and consultants' fees (not limited solely to those incurred in the course of actual litigation), any damages of third parties to which Plaintiff is exposed and may become liable, and other damages."

14. Promenade seeks recovery from EMJ for: (1) alleged negligence; (2) alleged defective product (based upon the use of the product identified as "OPF42" and/or defendant JEA's products); (3) alleged creation of an artificial condition (as defined in the Amended Complaint to mean that EMJ created "an artificial condition on land whose dangerous character creates unreasonable risks to the property of others."); (4) alleged breach of implied warranties; (5) alleged breach of express warranties; (6) alleged breach of contract; (7) alleged contractual

4

Case 1:11-cv-00083-CLC-WBC   Document 36   Filed 06/14/11   Page 4 of 12   PageID #: 261

indemnification; and (8) alleged breach of contract – Insurance Obligations. In addition to compensatory damages, Promenade seeks pre- and post-judgment interest, attorneys' fees and expenses of the litigation.

**EMJ's Primary Insurance Coverage**

15. National Union is informed and believes that EMJ is being provided with a defense in the Underlying Action by its primary liability insurance carrier, Zurich American Insurance Company ("Zurich").

16. Upon information and belief, Zurich issued two primary policies to EMJ, the first effective for the period January 31, 2008 to January 31, 2009 and the second effective for the period January 31, 2009 to January 31, 2010.

17. As of August 25, 2010, EMJ estimated that its damages to date totaled at least $3,428,755.00.

18. Upon information and belief, Zurich has paid approximately $929,210.10 toward repairs of allegedly damaged property and anticipates that damages could be well in excess of $10 million.

19. Upon information and belief, Zurich further anticipates that the damages associated with the Underlying Action will exceed its primary limits.

20. EMJ likewise has demanded coverage from Zurich as an additional insured under a policy or policies issued by Zurich to M. Hanna Construction Co. ("M. Hanna"), a co-defendant in the Underlying Action.

21. EMJ additionally has demanded coverage from Everest Reinsurance Group, Ltd. ("Everest") as an additional insured under a policy or policies issued by Everest to M. Hanna.

5

22. EMJ also has demanded coverage from The Hartford Insurance Group ("Hartford") as an additional insured under a policy or policies issued by Hartford to Gallet & Associates, Inc. ("Gallet"), a co-defendant in the Underlying Action.

### The National Union Umbrella Policies

23. National Union issued two policies of commercial umbrella liability insurance to EMJ: policy no. BE 6564608, effective January 31, 2008 to January 31, 2009, and policy no. BE 6564764, effective January 31, 2009 to January 31, 2010 (collectively, the "National Union Umbrella Policies"). Copies of the National Union Umbrella Policies are attached as Exhibits "B" and "C", respectively.

24. EMJ provided notice of a claim against it by Promenade to National Union and cited National Union policy no. BE 6564764. Based on the notice, however, the damages to property giving rise to the claims against EMJ may have occurred prior to January 31, 2009, potentially implicating National Union policy no. BE 6564608.

25. Coverage is limited or eliminated by terms of the National Union Umbrella Policies for the alleged liabilities and claims for which EMJ has sought or will seek coverage under the policies. By way of example:

26. EMJ may be entitled to coverage under one or both of the National Union Umbrella Policies with respect to the claims alleged in the Underlying Action only if EMJ can satisfy all conditions for coverage and coverage is not otherwise excluded.

27. The National Union Umbrella Policies are commercial Umbrella Liability Policies providing $25,000,000 per occurrence and in the aggregate, only upon the exhaustion of all Scheduled Underlying Insurance and all other insurance providing coverage to EMJ for

6

damages covered in whole or part by the National Union Umbrella Policies. National Union has no coverage obligations with respect to the liabilities and claims asserted against EMJ with respect to the construction defects that are the subject of the Underlying Action unless and until the Scheduled Underlying Insurance and all other applicable insurance is properly exhausted.

28. The National Union Umbrella Policies contain provisions regarding National Union's defense obligations upon exhaustion of underlying and other insurance coverage. Although National Union disputes that either policy provides coverage for certain or any of the claims alleged against EMJ, given Zurich's stated belief that its primary coverage soon may be (or already has exhausted), and given that EMJ also seeks coverage as an additional insured through other insurance issued by other carriers, National Union seeks a declaration regarding its potential defense obligations under the National Union Umbrella Policies.

29. Coverage may be available only for sums that an insured "becomes legally obligated to pay as damages." No coverage is available for damages that EMJ is not legally obligated to pay. There is no coverage to the extent that the claims against EMJ involve something other than "damages" as that term is used in the National Union Umbrella Policies.

30. Coverage may be available only to the extent that an insured is legally liable for damages because of "property damage," as that term is defined in the National Union Umbrella Policies. A defective component or faulty work do not constitute "property damage," and therefore, any damages arising from the repair or replacement of a defective component or faulty work are not covered under the National Union Umbrella Policies.

31. Coverage may be available only to the extent that any property damage occurs during the policy period. With respect to any continuing or progressive property damage, all such damage is deemed to occur only when the damage first commences.

32. Coverage may be available only for "those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay as damages by reason of liability imposed by law." National Union has no coverage obligation with respect to any contractual liability (as distinguished from tort liability) to the extent such liability does not constitute a legal obligation within the meaning of the National Union Umbrella Policies.

33. Coverage is barred for property damage, if any, for which the insured is obligated to pay for damages by reason of the assumption of liability in a contract or agreement, unless such contract or agreement is an insured contract or agreement as defined by the National Union Umbrella Policies.

34. Coverage is barred to the extent that the property damage, if any, to "impaired property," as defined in the National Union Umbrella Policies, or property that has not been physically injured arises out of a defect, deficiency, inadequacy or dangerous condition in the Insured's work.

35. Coverage is barred to the extent that the property damage, if any, to "impaired property," as defined in the National Union Umbrella Policies, or property that has not been physically injured arises out of a delay or failure by the Insured or anyone acting on its behalf to perform a contract or agreement in accordance with its terms.

36. Coverage is barred for property damage, if any, to "property being installed, erected or worked upon by the Insured or by any agents or subcontractors of the Insured."

37. Coverage is barred for property damage, if any, to that particular part of real property on which the insured or any contractors or subcontractors working directly or indirectly on the insured's behalf are performing operations, if the property damage arises out of those operations.

38. Coverage is barred for property damage, if any, to that particular part of any property that must be restored, repaired or replaced because the insured's work was incorrectly performed on it.

39. Coverage may be barred for property damage, if any, to an insured's work that is included in the "products completed operations hazard," as defined in the National Union Umbrella Policies.

40. Coverage may be barred for property damage, if any, to property an insured owns, rents or occupies.

41. Coverage is barred for loss, cost, or expense incurred for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of the insured's work.

42. Coverage is barred for "any liability arising out of the rendering of, or the failure to render professional services or any error, omission, or mistake of a professional nature performed by or on behalf of the Insured, including but not limited to: a. the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications; and b. supervisory, inspection architectural, engineering or surveying services."

9

43. Coverage may be available only to the extent that any bodily injury or property damage associated with the construction defects is the result of an "occurrence," as that term is defined in the National Union Umbrella policies.

44. Coverage may be limited or eliminated under the National Union Umbrella policies based on other terms.

## COUNT I

### DECLARATORY RELIEF

45. National Union restates and re-alleges Paragraphs 1 through 44.

46. National Union has no coverage obligations with respect to the liabilities and claims asserted against EMJ with respect to the construction defects that are the subject of the Underlying Action unless and until the Scheduled Underlying Insurance and all other applicable insurance is properly exhausted

47. Coverage is limited or eliminated by terms of the National Union Umbrella Policies for the alleged damages for which EMJ has sought or will seek coverage under the policies.

48. Actual controversies now exist between EMJ and National Union relating to their respective legal rights and duties under the National Union Umbrella Policies.

WHEREFORE, National Union respectfully requests that this Court enter an order:

1. Declaring that National Union has no duty to defend or indemnify EMJ for certain of the liabilities and claims arising from the construction defects at issue in the Underlying Action based on the terms of the National Union Umbrella Policies.

2. Declaring that to the extent National Union has any coverage obligations, its duty

10

to defend or indemnify EMJ under the National Union Umbrella Policies does not begin unless and until EMJ has exhausted the Scheduled Underlying Insurance and all other insurance providing coverage to EMJ for any damages covered in whole or part by the National Union Umbrella Policies, including those policies under which EMJ is an additional insured in connection with construction of the The Promenade.

      3.      For costs of suit incurred herein; and

      4.      For other such relief as this court deems just and proper.

Dated: June 14, 2011.

      Respectfully submitted,

      TAYLOR, PIGUE, MARCHETTI & MINK, PLLC

      s/ Wm. Ritchie Pigue
      Wm. Ritchie Pigue, BPR No. 2898
      2908 Poston Avenue
      Nashville, TN 37203
      (615) 320-3225

      **Counsel for National Union Fire Insurance Company of Pittsburgh, Pa.**

## CERTIFICATE OF SERVICE

I do hereby certify that this First Amended Complaint has been filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail and/or facsimile or hand delivery. Parties may access this filing through the Court's electronic filing system.

Dated this 14th day of June, 2011.

s/ Wm. Ritchie Pigue

12

Case 1:11-cv-00083-CLC-WBC   Document 36   Filed 06/14/11   Page 12 of 12
PageID #: 269